## Boyd's Exor v. Laurel County.

(Decided October 26, 1910.)

### Appeal from Laurel Circuit Court.

1. Counties—County Officers—Indebtedness to County—Limitation of Action.—A commissioner, upon appointment of the Laurel county court to make a settlement with the county treasurer, found that the county was indebted to him in the sum of $5.02, which was then paid to him by the sheriff. Later, after the death of the treasurer, an action was brought by Laurel county against his executor to surcharge the settlement, claiming a large sum was due the county. Held, that such settlement can not be attacked after the lapse of more than ten years thereafter, and the fact that the commissioner, in making the settlement, relied on the treasurer's books, does not detract from its binding force.

2. Settlement by County Officer—Action to Surcharge—Statutory Period.—Where a county treasurer made a final settlement of his accounts and satisfactorily accounted to the county for the balance found to be due in his hands, his position of trustee, if such it may be called, thereupon ceased and he thereafter occupied the position of creditor only, and the county having failed to surcharge the settlement within the statutory period, cannot thereafter do so.

H. C. CLAY for appellant.

HAZELWOOD & JOHNSON and H. J. JOHNSON for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

By an act which became a law May 10th, 1884, the Legislature authorized the county court of Laurel county to issue bonds for the purpose of building a courthouse. Pursuant to the authority so given, the county court issued seventeen bonds of the par value of $1,000 each and bearing interest at the rate of six per cent. per annum. These bonds were serially numbered from one to seventeen, inclusive, and each was spread upon the record of the Laurel county court. Bond No. 17 was sold and delivered to Joseph A. Craft, who, on January 12th, 1893, sold, transferred and delivered the same to R. Boyd, Sr. This transfer was duly made on the order book of said court. Upon the death of R. Boyd, Sr., this bond came into the possession of his executor, who brought this action against the county of Laurel to re-

cover the amount of the bond, with six per cent. interest thereon from January 1st, 1895. Judgment was rendered in favor of Laurel county. From this judgment this appeal is prosecuted.

Appellee first defended on the ground that the bond had been paid. This answer was filed on May 28th, 1907. On February 25th, 1909, appellee offered, and the court permitted it to file an amended answer and counterclaim, wherein it set forth the fact that certain commissioners were appointed to superintend the construction of the courthouse and to receive and pay out the funds raised for that purpose; that R. Boyd, Sr., was made treasurer of the fund; that there was paid to him the sum of $41,528.17, and he accounted for and paid out only $36,508, leaving a balance due appellee of $5,020.17. Appellee then asked for a settlement of R. Boyd, Sr.'s accounts, and charged that the settlement would show a large balance in favor of appellee, for which sum it asked judgment over against appellant. By appropriate pleadings appellant denied that R. Boyd, Sr., had received any sum which he did not account for, and pleaded that on May 9th, 1898, he made a full and complete settlement of his accounts as treasurer of the courthouse commission, and that this settlement was made more than ten years before appellee filed its answer and counterclaim. To overcome the allegations of the reply, appellee denied that R. Boyd, Sr., had made a full and complete settlement of his accounts, and also pleaded that he voluntarily sought and obtained the position of treasurer, and that the statute of limitations did not run in his favor because of the trusteeship which he held.

The facts in regard to the settlement are as follows: On October 27th, 1897, Henry C. Hazelwood was, by an order of the Laurel county court, appointed commissioner to make settlement with R. Boyd, Sr., and the courthouse commissioners. Pursuant to this order he did make a settlement. This settlement shows that there had come into R. Boyd's hands as treasurer of the commission the sum of $38,082; that he had paid out the sum of $36,848, leaving a balance in his hands of $1,234. The settlement further shows that bonds Nos. 16 and 17 were then unpaid. In adjusting the matter the commissioner stated that he had made the settlement from R. Boyd's books, which he assumed to be correct, but that he had been unable, after considerable search and inquiry, to find any vouchers by which the amounts set out in the

settlement could be verified or by which they, could be shown to be correct, except as to the bonds. This account, however, he found to be correct. Thereafter the commissioner filed an additional report, to the effect that he now desired to file and make part of said settlement the vouchers and receipts and other evidence of amounts and payments not referred to in the settlement as being on file in the county court clerk's office, and to make the same a part of said settlement. On May 9th, 1893, the special commissioner's supplemental settlement and original settlement were confirmed and ordered to be spread on the county court order books. As said before, this settlement left bonds Nos. 16 and 17 outstanding. On May 10th, the day after the settlement was confirmed, R. Boyd paid off and cancelled bond No. 16, and paid the interest on bond No. 17 up to January 1st, 1895. This left the county indebted to R. Boyd in the sum of $5.02. For this sum the sheriff of the county executed and delivered his check to R. Boyd. Thus it will be seen that at that time bond No. 17 was outstanding; and that the interest thereon had been paid up to January 1st, 1895.

It is not shown that any sum was ever paid on bond No. 17 after May 10th, 1898. It is insisted, however, that appellee, although it failed to attack said settlement on the ground of fraud or mistake within ten years from the time it was approved and confirmed, now has the right to disregard said settlement and to show that R. Boyd, Sr., as a matter of fact received other sums than those embraced in the settlement, and for which he failed to account. This cannot be done. A commissioner was appointed to settle the accounts of R. Boyd as treasurer. It is immaterial from what sources he obtained his information. The mere fact that he relied upon R. Boyd's books to make the settlement does not detract in the least from the binding character of the settlement. Furthermore, extracts from the books in question are before us, and these show upon their face that R. Boyd, Sr., kept a careful and accurate account of every transaction. The special commissioner expressly states in his report that the account, so far as the bonds were concerned, is correct. Before the settlement was finally confirmed, he had produced and filed the vouchers and the evidence of payment. We conclude that the settlement so made was a final and complete settlement between the parties. If after that appellee desired to attack the

settlement, it could only do so within the time it could have maintained an action for relief on the ground of fraud or mistake. R. Boyd, Sr., did not occupy a position of continuing and subsisting trust (Ky. St. section 2543) so as to prevent the statute from running in his favor. When he finally settled his accounts on May 9, 1898, and satisfactorily accounted to the county for the balance found in his hands, his position of trustee, if such it may be called, thereupon ceased, and from that time on he occupied the position of creditor only, to whom the county had obligated itself to pay bond No. 17, together with the accrued interest. (Richardson v. Chanslor's Trustee, 103 Ky. 424; Blake et al v. Wolfe et al, 105 Ky. 380.) From that time on, within the time prescribed by the statute, appellee had the right to surcharge the settlement on the ground of fraud or mistake. Having failed to do this within the statutory period, it cannot do so now. Nor can it disregard the settlement which, in our opinion, is final and conclusive. The wisdom of a statute of repose is amply illustrated by the facts of this case. Now that R. Boyd, Sr., is dead and can no longer testify, it is sought, after a lapse of more than ten years, to show that he received sums which he did not account for, but which we have no doubt, when we consider the painstaking care and accuracy with which he kept his accounts, that, if living, he could satisfactorily explain.

Judgment reversed and cause remanded, with directions to enter judgment in accordance with the prayer of the petition.